[Civ. No. 2264. Third Appellate District.—March 21, 1921.]

PAUL E. PETERSON, Respondent, v. C. A. WAGNER et al., Appellants.

[1] CONTRACTS—RESCISSION—RESTITUTION.—In actions either to rescind or cancel a contract, the party seeking the relief must restore to the defendant whatever of value he has paid or given under it, or, in other words, the defendant must be by plaintiff restored to *statu quo.*

[2] ID.—EXCEPTIONS TO GENERAL RULE—EQUITY.—Among the exceptions to the general rule that the party against whom the remedy of rescission is invoked must be restored to *statu quo* before the relief sought will be granted is the case where, without fault of plaintiff, there have been peculiar complications which make it impossible or not imperative for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties.

[3] ID.—RENUNCIATION BY BUYER—DAMAGE TO SELLER—RESTITUTION UNNECESSARY.—Where the act of the defendant in renouncing the contract has caused the plaintiff to suffer a loss far in excess of the sum which the defendant has advanced to the plaintiff prior to such renunciation, it is not necessary for the plaintiff to restore, or offer to restore, to the defendant the sum advanced him by the defendant to entitle him to relief, whether the remedy he invokes be either that of rescission or that of cancellation.

[4] ID.—SALE OF HOPS—SEVERAL INSTRUMENTS—SINGLE CONTRACT—ACTION TO ANNUL—PAROL EVIDENCE.—Where three separate instruments relating to the sale of hops to be grown during three

52 Cal. App.—1                    (1)

successive years, each instrument covering one of the three years and embodying identical provisions, except as to the price to be paid, are executed between the same parties at the same time, in an action by the seller to cancel and annul such instruments, following a renunciation by the buyer of the agreement as to the crop grown during the first year, parol evidence of a contemporaneous oral agreement of the parties to the effect that it was intended by the parties that the three instruments should constitute a single contract is properly admitted, the instruments being silent upon that matter.

[5] ID.—SALE OF HOPS FOR THREE YEARS—INDIVISIBLE CONTRACT—EVIDENCE—FINDING.—In this action by the seller to cancel and annul three separate instruments relating to the sale of hops to be grown during three successive years, each instrument covering one of the three years and embodying identical provisions, except as to the price to be paid, the trial court, having accepted the testimony of plaintiff as revealing the truth of the transaction, was warranted in finding that the transaction involved but a single, indivisible contract for the sale and purchase of the hops for three years.

[6] ID.—APPLICATION OF ADVANCEMENTS—IMPLICATION FROM AGREEMENT.—The fact that the defendant, at the time he agreed to advance certain funds to enable the plaintiff to cultivate and harvest the crop of hops, knew that plaintiff had already contracted to sell a portion of the crop of another, but did not provide in the agreement that the moneys so advanced should be exclusively used in harvesting the portion of the crop sold to defendant, would warrant the implication that the agreement to make the advances was made with the intention that the moneys so advanced should and would be used in harvesting the entire crop.

[7] ID.—ESTOPPEL—PLEADING.—Estoppel *in pais* is not available as a defense, and is not properly in the case, where it is not pleaded.

[8] ID.—ASSIGNMENT AFTER BREACH—ESTOPPEL—EVIDENCE.—In this action by the seller to cancel and annul three separate instruments constituting an agreement for the sale of hops to be grown during three successive years, the evidence failed to show that the defendants, who had taken an assignment of the agreement long after the buyer had renounced and terminated the same, were induced to enter into the transaction through any act or words or conduct or negligence of the plaintiff.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

4. General rule that parol evidence is not admissible to vary, add to, or alter the terms of a written contract, notes, 56 **Am. St. Rep.** 659; 17 **L. R. A.** 270.

The facts are stated in the opinion of the court.

Driver & Driver and G. W. Bedeau for Appellants.

Thomas B. Leeper for Respondent.

HART, J.—This is an appeal by separate defendants (C. A. Wagner and A. A. Merkeley) and defendant B. F. Hall from a judgment terminating, invalidating, and voiding three written instruments for the purchase of hops for the years 1918, 1919, and 1920, and also for injunctive relief, enjoining and restraining defendants, their agents, attorneys, and assignees, from doing any act which would prevent plaintiff from having peaceful possession and enjoyment of the property mentioned in said instruments.

There are two appeals growing out of the same transaction and presented here upon two separate and distinct records. The appeal in the case we are now considering (No. 2264) is by the defendants Wagner and Merkeley from the judgment in favor of the plaintiff, and is supported by a transcript of the testimony and proceedings taken at the trial, as authorized by section 953a of the Code of Civil Procedure. The other appeal (No. 2263) is by defendant Ben F. Hall from the judgment rendered and entered as against him in favor of plaintiff, and is brought to this court upon a bill of exceptions.

The parties have stipulated that, inasmuch as the legal points involved in both cases are identical, the two appeals may, for the purposes of convenience, be heard together, and that the briefs filed by the respective parties in both cases may be considered in disposing of both appeals.

The agreement between the parties called for the delivery by plaintiff to Wagner of 40,000 pounds of hops for each of the years 1918, 1919, and 1920.

The three written instruments evidencing said agreements are identical in form, with the exception that the price agreed to be paid for the hops for the years 1918 and 1919 was sixteen cents per pound, while for the 1920 crop of hops fifteen cents per pound was the stipulated price. Omitting the preliminary or explanatory provisions of the instruments, we here present the following as the salient terms of the agreement:

"In consideration of the covenants of said seller herein contained the said buyer agrees to pay to said seller for said hops that are up to the requirements of this contract the sum of sixteen cents per pound net upon delivery thereof.

"Should there be any dispute between the parties hereto respecting the quality or condition of any hops tendered hereunder, or as to any fact involved in the performance of this contract, such fact in dispute shall be determined by two competent arbitrators, one of whom shall be selected by each party hereto, and if such arbitrators are unable to agree, they shall select an umpire, and the decision of any two so chosen, as to such fact, shall be conclusive and final. Such arbitrators shall be men experienced in the cultivation, growing and curing of hops.

"And to assist said seller to cultivate, harvest and prepare said hops for delivery, as aforesaid, said buyer further agrees to advance to said seller during the year of this agreement, if said seller shall so request, the following sums of money, to wit: $800.00 on or about the 1st day of March, 1918, $800.00 on or about the 1st day of May, 1918, for cultivating purposes, and $1,600.00 on or about the 15th day of August, 1918, for harvesting, curing and baling purposes.

"All of said moneys so advanced shall, at the time of the delivery of said hops, constitute and be deemed as part payment upon the purchase price thereof. And said sums of money, so advanced as aforesaid, and all other sums that may be advanced, shall bear interest from the date when the same were made, and up to the time of delivery of said hops upon which such advances are made, at the rate of seven (7) per cent per annum. Provided, that in the event that said hops are not delivered in accordance with the provisions of this contract, then such advances shall be repayable by said seller to said buyer at the time when such delivery should have been made, and the repayment of such sums and all other obligations of said seller under this contract shall be evidenced by his promissory note or notes, and are secured by a mortgage lien in favor of said buyer upon all of said hops; and this instrument shall and does constitute such mortgage upon said hops in favor of said buyer for the purpose aforesaid, and shall

stand as such mortgage and as a contract for the sale of such portion of said hops as are necessary to reimburse said buyer for all sums of money so due to said buyer under this contract. If, however, during the year of this contract, the growing hops herein referred to are not in such condition at the proper season to produce the quality and quantity of hops above specified and agreed upon, then said buyer may give notice in writing to said seller that said buyer will not make any advances or further advances to said seller and in such event said buyer shall be discharged from any obligation to make any advance of any money and if any advances have been made, the same shall be repayable when the above facts are ascertained.

"That said seller shall keep said hops insured at all times for an amount not less than the advances made to him under this contract, insurance policy to be delivered to the buyer and loss made payable thereunder to the buyer as his interest may appear. If the seller fails to keep said hops insured as above provided, the buyer may insure same, at the expense of the seller, for which purpose the seller hereby constitutes the buyer his authorized agent.

"This agreement shall bind the heirs, devisees, executors, administrators and assigns of all parties hereto."

The complaint alleges that, although the agreement entered into between the plaintiff and the defendant was evidenced by three separate instruments, said instruments "relate to the same matter, are between the same parties, are parts entered into at the same time, and constitute in fact one contract; that said instruments are and were not distinct and severable; that the consideration expressed in each of said instruments is and was not distinct and severable; that the consideration entering into each of said instruments was the agreement to buy and sell said hops for said three years as set forth in said three instruments; that the entire consideration for each of said separate instruments is the entire consideration contained in said three separate instruments; that in pursuance of said contract, plaintiff did plant, cultivate and raise a crop of hops on the land described in said contract for the year 1918; that said crop so planted and raised on said land,

during the year 1918, was in excess of the forty thousand (40,000) pounds of hops agreed to be furnished under said contract; that said crop of hops was of the kind and quality stipulated in said agreement; that defendant, Wagner, in pursuance of said contract, on or about the 1st day of March, 1918, advanced and paid to plaintiff the sum of Eight Hundred ($800.00) Dollars, and on the 1st day of May, 1918, the sum of Eight Hundred ($800.00) Dollars for cultivating purposes; that said agreement provides that defendant, C. A. Wagner, should advance to plaintiff the sum of Sixteen Hundred ($1600.00) Dollars on or about the 15th day of August, 1918, for harvesting, curing and baling purposes; that said defendant C. A. Wagner, advanced to plaintiff, under said contract, the sum of Five Hundred ($500.00) Dollars on August 17, 1918, and the sum of Six Hundred ($600.00) Dollars on August 31, 1918, for harvesting, curing and baling purposes; that on or about the 31st day of August, 1918, and thereafter until the 15th day of November, 1918, the market price of hops mentioned in said contract was eight cents per pound; that during all of said time defendant, C. A. Wagner, refused to advance to plaintiff the sum of Five Hundred ($500.00) Dollars, or any other sum, or any sum at all, for harvesting, curing and baling purposes; that on the 31st day of August, 1918, and thereafter until the 15th day of November, 1918, defendant, C. A. Wagner, continually repudiated said agreement and refused to carry out or perform any of the terms or conditions thereof; that on account of the prevailing low market price of said hops, from August 31, 1918, to November 15, 1918, plaintiff was unable to procure money enough to harvest all his crops from any source, and did not have money or other means of harvesting, curing and baling said crop of hops; that all said crop of hops was not harvested and that four hundred and fifty bales of the same were totally destroyed; that on account of defendant C. A. Wagner's refusal to advance said sum of Five Hundred Dollars to plaintiff, plaintiff was unable to harvest all his crop for the year 1918; that during said time plaintiff repeatedly demanded of defendant, C. A. Wagner, that he advance to him the sum of Five Hundred Dollars to allow plaintiff to harvest said crops, but defendant, C. A.

Wagner, repeatedly refused to advance said sum of Five
Hundred Dollars, or any other sum at all for said pur-
pose and repeatedly repudiated said contract and repeatedly
told plaintiff that plaintiff was released from said con-
tract, and that said contract was at an end; that on ac-
count of the refusal of defendant, C. A. Wagner, to so
carry out the terms of said contract all of said crop of
hops was not harvested and four hundred and fifty bales of
the same were totally lost and destroyed; that said contract
was terminated by defendant, C. A. Wagner, repudiating the
same and the acceptance of said repudiation by plaintiff;
that after the signing of the armistice between the allies
and their enemies, on or about the 15th day of November,
1918, the market price of hops began to raise, until on or
about the 18th day of December, 1918, the market price
of hops mentioned in said agreement was twenty-five cents
per pound; that on or about the 18th day of December,
1918, said defendant, C. A. Wagner, began to assert and
claim that said contract was still in full force and effect;
that on the 18th day of December, 1918, said C. A. Wag-
ner had said instrument, relating to the crop of hops for
the year 1919, recorded in the county recorder's office of
Sacramento County and that on or about the 24th day of
January, 1919, he assigned said instrument, relating to the
crop of hops for the year 1919, to defendant, Ben F. Hall;
that defendant, Ben F. Hall, has notified plaintiff of said
assignment of said contract and now contends that the
same is in full force and effect and that plaintiff is obligated
to deliver the hops mentioned in said instrument to him;
that each of said defendants now claim that said instru-
ment, relating to the crop of hops for the years 1919 and
1920, is in full force and effect. It is further alleged
that said instruments, relating to the crops of hops for
the years 1919 and 1920, now constitute a cloud and an
encumbrance upon plaintiff's crops for said years, and
that the same, unless canceled and annulled by a decree
of the court, will hinder and annoy plaintiff in the peace-
able possession and enjoyment of said crops of hops for
said years, and that they do now hinder, delay and prevent
plaintiff from contracting for the sale of said hops for said
years, or of selling or disposing of the same. The prayer
is for a judgment declaring said agreement terminated and

canceled, and that ''said instruments, relating to said crop of hops for 1919 and 1920, be declared null and void, and that defendants and each of them, their agents, attorneys, successors and assigns, be restrained and enjoined from attempting to enforce either of said instruments or assert the validity of the same, or to transfer the same.''

It further appears from the pleadings that prior to the time of the execution of the three instruments just referred to the plaintiff had contracted to sell to Wm. Uhlmann & Co. 300 bales of hops, or about 60,000 pounds of the crop of 1918 to be grown on the said premises, which contract was made prior to the contract for 40,000 pounds of the 1918 crop before the court in this action, and constituted a prior obligation; that on the twentieth day of February, 1918, the date of the execution of the three contracts, the defendant Wagner sold and assigned, by an instrument in writing, the contract for the sale and purchase of the crop for the year 1918 to Harry Fraser; that on the twentieth day of January, 1919, said Wagner sold and assigned by an instrument in writing the contract for the sale and purchase of the crop of the year 1919 to defendant B. F. Hall; that on January 16, 1919, said Wagner sold and assigned by an instrument in writing the contract for the sale and purchase of the crop of the year 1920 to the defendant A. A. Merkeley. It appears that Mr. Fraser, the purchaser of the 1918 crop, did not desire to have his name known in the transaction and, accordingly, the advances of money to assist the plaintiff in cultivating and harvesting his crop as called for by the contract for the 1918 crop were made by defendant Wagner with funds furnished for that purpose by Fraser.

The separate demurrers of the defendants Wagner, Hall, and Merkeley were overruled by the court, whereupon the said defendants filed answers denying generally the material allegations of the complaint, and asking that said contracts for the years 1919 and 1920, respectively, be adjudged ''good, valid, existing, independent and separate contracts,'' etc., and that the same should constitute valid liens upon the lands involved for said 1919 and 1920 crops, and for costs.

Upon a trial of the issues involved the court made its findings of fact and conclusions of law, the latter being as fol-

lows: 1. "That the contracts set out in plaintiff's complaint and marked as Exhibits 'A,' 'B,' and 'C,' were one entire contract, that the same were terminated by the breach and refusal of defendant Wagner to perform the same and plaintiff's election to treat said breach as a termination of said contract; that the same were terminated by plaintiff and defendant Wagner mutually agreeing that the same should be and were terminated; that the same are now terminated, and invalid, and of no force and effect, and have no existence; 2. That the assertion by defendants of the validity of said contract and the claim of defendant to have an interest in the crop of hops mentioned in said contract for the years 1919 and 1920, prevents plaintiff from contracting to sell, or to sell said hops for said years, and prevents plaintiff from peaceably enjoying and holding said property." Judgment was ordered accordingly.

The appellants contend: 1. That the complaint does not state facts sufficient to constitute a cause of action, in that therein the plaintiff does not state that he is ready to and does restore and offer to restore to defendants the advances made to him by the defendant Wagner according to the terms of the contract; 2. That the court erred in holding that the several written instruments constituted a single contract or involved a single transaction. In this connection, it is further contended that the court erred in admitting evidence of a parol contemporaneous agreement of the parties as to the scope and effect of the three written instruments—that is, that parol testimony was incompetent to prove that the intention of the parties unexpressed in the writings was that the said writings were interdependent and were to evidence the terms of a single contract relating to a single transaction, the effect of said testimony being to change or modify the terms of a written agreement; 3. That the failure of Fraser and Wagner to make the further advance of $500, mentioned in the complaint, did not constitute or involve a breach of the contract; 4. That defendant Hall was a purchaser for value without notice; 5. That there was no mutual cancellation of the contract as found by the court; 6. That findings 18 and 19 are not supported by the evidence. These findings are as follows: 18. "That defendant, Wagner, refused to perform said contract by his failure to advance $500 to plaintiff; that said $500 would have

enabled plaintiff to have harvested the remainder of his crop; that plaintiff was unable to secure said $500 or any other sum from any other source and by reason thereof was unable to harvest the remainder of his crop and 450 bales of the same (about 90,000 pounds) was totally lost and destroyed to plaintiff; that by reason of defendant Wagner's breach of said contract plaintiff suffered damages and was and is damaged in the sum of $9,000''; 19. ''That prior to and at the time of the termination of said contract plaintiff had performed all the terms and conditions thereof to be done and performed on his part and was then and there ready, able, and willing to perform said contract on his part.''

The contract involved in this controversy is not only one for the sale of the hops produced by plaintiff in the years 1918, 1919, and 1920, but also, by its express terms, constitutes a mortgage of said crops to secure the payment by plaintiff to Wagner of the sums advanced by the latter to the former according to the terms of the agreement.

The complaint alleges that Wagner promised and agreed to make certain advances to plaintiff for the purpose of enabling the latter to harvest the crops; that he (Wagner), after making certain advances which were short by $500 of the maximum amount which he agreed to advance, refused to advance said mentioned sum to plaintiff and so repudiated the agreement; that, by reason of such refusal, the plaintiff was prevented from harvesting all the hops growing on his premises in the year 1918 and that he thereby lost 450 bales. It is alleged that Wagner repeatedly refused to advance said sum of $500 and repeatedly told plaintiff that he (plaintiff) was released from said contract and that said contract was at an end, etc. From these allegations it is clear that the complaint proceeded upon the theory that there was a mutual renunciation of the agreement to sell and buy the hops and, therefore, the principal object of this action was to obtain a decree removing the mortgage lien from the crops for the years covered by the agreement. It was necessary, of course, as a prerequisite to such relief, to have the contract declared void and for that reason canceled and annulled, and this, as alleged, upon the ground that Wagner had repudiated or abandoned the contract, entailing upon the plaintiff the loss mentioned.

[1]  It is undoubtedly the general rule that in all actions
either to rescind or cancel a contract, the party seeking the
relief must restore to the defendant whatever of value he
has paid or given under it, or, in other words, the defendant
must be by plaintiff restored to *statu quo*.  (*Sullivan v.
California Realty Co.*, 142 Cal. 201, 204, [75 Pac. 767].)
This rule follows from the equitable principle that he who
seeks equity must do equity, and that upon that principle
no one will be permitted to hold that which he has secured
from another under a contract whose force he is seeking to
destroy while it is still executory, unless he can show by his
pleading and his proof that there are equitable circum-
stances in the case which would justify him in retaining
whatever of value he has received under the contract from
the other party or in rendering it not requisite that he
should restore the other party to *statu quo*.  In this case,
however, the complaint shows that the defendant Wagner
refused to live up to the terms of the contract, and this
amounted to an abandonment thereof.  The plaintiff seems
to have acquiesced in Wagner's breach of the agreement,
for he has not sued for damages for the breach or attempted
to enforce the terms of the agreement.  He has proceeded
upon the theory, well justified, that there was a mutual
abandonment, which amounted to a rescission—indeed, the
only way that a rescission may be effected by the act of
the parties themselves, since the mere abandonment of the
contract by one of the parties and refusal to proceed there-
with cannot constitute a rescission, although such act is a
ground for an action for rescission.  Standing on the aban-
donment of the contract by Wagner and his own acquies-
cence therein, the plaintiff merely seeks by his complaint to
secure a cancellation of the agreement to the end that the
embarrassment incident to the lien upon his crops for the
years embraced in the contract and the mortgage may be
removed.

[2]  But there are exceptions to the general rule that
the party against whom the remedy of rescission is invoked
must be restored to *statu quo* before the relief sought will
be granted.  Some of these exceptions are given in *Kelley* v.
*Owens*, 120 Cal. 502, [47 Pac. 369, 52 Pac. 797], and among
them is the case where, without fault of plaintiff, there have
been peculiar complications which make it impossible or not

imperative for plaintiff to offer full restoration, although the circumstances are such that a court of chancery may by a final decree fully adjust the equities between the parties. (See *Richards* v. *Farmers' etc. Bank,* 7 Cal. App. 387, 393, 394, [94 Pac. 393].)

[3] While it is true that the plaintiff does not sue in tort or for damages for the breach of the contract, we may nevertheless consider the allegation in the complaint that he did suffer damage by reason of the violation of the contract by Wagner for the purpose of determining the equities of the case. The maxim that he who seeks equity must do equity does not apply where, as here, it is made clearly to appear in the complaint that in the transaction as to which relief is sought the plaintiff, by reason of the abandonment of the contract by the defendant, has suffered a loss equal to if not in excess of any loss which the defendant has suffered or would suffer from the transaction if restoration to the latter of what he has parted with has not been made. The allegation that the act of Wagner in renouncing the contract had cost plaintiff 450 bales of hops, on account of his inability to harvest them by reason of Wagner's refusal to advance the $500, as agreed, while not direct as to the extent of his loss when measured in money, clearly enough shows, when considered in connection with the contract (which is made a part of the complaint), that the loss so suffered by him is far in excess of the sums advanced to him by Wagner. Under these circumstances, it was not necessary for the plaintiff to restore, or offer to restore, to the defendants the sums advanced him by Wagner to entitle him to the relief he by his action asks for, whether the remedy he invokes be either that of rescission or of cancellation.

In this connection, we may with propriety further observe that the evidence does not call for the application of the equitable principle above mentioned. As above stated, the manifest object of plaintiff's action was to get rid of the mortgage lien upon his crops for the years covered by the mortgage. The court found upon what we believe to be sufficient evidence that the plaintiff, by reason of the failure of Wagner to complete the advancements he agreed to make to plaintiff, and further, because of the failure of plaintiff to secure from any other source the sum of $500,

the latter suffered the loss of 450 bales, or 90,000 pounds, of hops, and that the damage so suffered by plaintiff amounted in money to the sum of $9,000. It is manifest, therefore, that, while it is true that plaintiff's action is in effect one to quiet title to the mortgaged crops, the equitable principle referred to, which is undoubtedly applicable in all cases to quiet title where the circumstances thereof made it appropriate (see *Booth* v. *Hoskins,* 75 Cal. 271, 276, [17 Pac. 225]), is not, upon the evidence, applicable here.

[4] The next point to which attention will be given is that the court erred in allowing parol testimony for the purpose of explaining that the three instruments involved herein were understood and intended by Peterson and Wagner, to constitute a single contract respecting a single transaction. The contention of the defendants is, as has been shown, that the three several instruments were not interdependent or indivisible, but involved three distinct independent contracts, the one having no relation to or connection with the other. This, it is contended, appears from the face of the writings themselves, and hence, so it is argued, the effect of the allowance of parol testimony for the purpose above stated was to vary or modify the terms of said instruments by parol. The importance of this point is, as is obvious, that even if the agreement as to the crop for 1918 was breached by Wagner, such breach could not affect or nullify the agreement as to the crops for the years 1919 and 1920.

The rule that the terms of a written contract cannot be changed or varied by parol testimony or evidence extrinsic to the writing itself is elementary. It has been expressly adopted into our system of laws and is embraced in a number of sections of our codes, one of which is section 1856 of the Code of Civil Procedure. Expressly is it therein provided that "when the terms of an agreement are reduced to writing by the parties, it is to be considered as containing all those terms," and, therefore, neither the parties to such agreement nor their representatives, or successors in interest can introduce evidence of the terms of the agreement other than the contents of the writing, except, "1. Where a mistake or imperfection of the writing is put in issue by the pleadings; 2. Where the validity of the agreement is the fact in dispute." But said section contains this

qualification: "But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1860, or to explain an extrinsic ambiguity, or to establish its illegality or fraud."

The Civil Code, section 1625, also lays down a familiar rule relative to written agreements as follows: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

Section 1698 of the last-named code further provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

It is the provisions of the foregoing sections which appellants insist were offended by the allowance of the parol testimony referred to. This theory is founded on a misconception of the effect of the testimony upon the writings in question. The testimony, the legal propriety of which is here challenged, cannot justly be held to have had the effect of varying or changing in any particular or in any sense the *terms* of the written instruments. The essential or vital terms of the latter were that the plaintiff would sell a certain specified number of pounds of the hops produced by him in each of the years mentioned in said instruments at a specified price to be paid by the buyer, and that Wagner would advance to plaintiff certain sums of money to be used in cultivating and harvesting the crops for the years covered by the agreement. It is obvious that the testimony objected to had no bearing whatever upon the terms of the agreement. The simple question was whether the three instruments were intended by the parties to constitute one or a single contract. Upon their face they appeared to represent three distinct or several contracts, but the plaintiff in his complaint in effect alleged that they were intended and understood by and between him and Wagner, before and at the time of their execution, to represent one single transaction and one single contract, and that it was that specific understanding and agreement that moved him to enter into the contract with Wagner upon the terms

therein expressed; that, in brief, it formed part of the consideration inducing him to enter into the contract.

Section 1642 of the Civil Code declares: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."

Section 1647 of the same code provides: "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Jones on Evidence, volume 3 (by Horwitz), section 439, declares this to be the rule: "The general rule is not violated by allowing parol evidence to be given of the contents of a distinct valid contemporaneous agreement between parties which was not reduced to writing, when the same is not in conflict with the provisions of the written instrument."

Again, the same author, pages 178, 179 (section 439) of the same volume, states the rule in this fashion: "The law is that agreements or representations made prior to the written contract under which the party was induced to sign the contract may be shown; in other words, where the parol contemporaneous agreement *was the inducing and moving cause of the written contract, or where the parol agreement forms part of the consideration for a written contract, and where the written contract was executed upon the faith of the parol contract or representations, such evidence is admissible.*"

The books contain many cases in which the principles above stated have been applied. Indeed, in the case of *Torrey* v. *Shea,* 29 Cal. App. 316, [155 Pac. 820], in which the opinion was prepared by Mr. Justice Lennon, then a member of the court of appeal of the first district but now of the supreme court, we have a concrete application of the rule recognizing the legal propriety of as well as the necessity for the allowance of parol testimony as in aid of the ascertainment of the real intention of the parties to a written contract, where the same is itself characterized by more or less obscurity in that particular or where it is otherwise made to appear that the real intent of the instrument cannot be made known except by proof of a contemporaneous parol agreement. Like the case here, the action in that case involved a contract for the sale and purchase of hops produced by the plaintiff for three successive years. The con-

tract, as here, was made into three different instruments, each covering a different one of the three years included in the agreement. The parties to the action in that case occupied, as litigants, positions reverse to those of the parties in the case at bar, the seller having breached the agreement by refusing to deliver the hops to the buyer thereof as agreed. The latter, as plaintiffs, maintained, as does the plaintiff here, that the three instruments constituted a single contract or but one transaction and that such was the intention as was made manifest in their oral negotiations accompanying and directly resulting in the execution of the contract. The trial court in that case ruled "that the defendants were entitled to show by parol evidence that the three instruments were intended and executed by the parties thereto to cover but one transaction, and that the controlling consideration for the execution of the particular writing in suit, contracting for the delivery of hops during the year 1911, was the contemporaneous execution of two other instruments calling for similar deliveries in the years 1909 and 1910."

The appellate court, upholding the ruling of the trial court, with clearness expounds the rule sanctioning, under such circumstances as were existent in that case and as are present in the instant case, parol proof of a contemporaneous oral agreement disclosing the intention of the parties as to whether two or more writings, apparently independent of each other, were to constitute a single transaction. Indeed, so much is said in the opinion that applies with singular cogency to the question in hand, that the temptation to reproduce herein an extensive excerpt therefrom is difficult to resist; yet to do so would extend this opinion to a much greater length than is desirable, and we shall, therefore, content ourselves by a mere reference to the case. It should be stated, however, that the supreme court denied a hearing of the case and later, in the case of *Merkeley* v. *Fisk*, 178 Cal. 748, [178 Pac. 945], cited *Torrey* v. *Shea* upon the very proposition discussed in the latter case, and it is sufficient to make the following excerpt from the later case named: "Obviously, the most certain criterion of the completeness of an individual writing will be found within the writing itself. It is therefore the general rule that two or more separately executed instruments may be considered

and construed as one contract only when upon their face they deal with the same subject matter and are by reference to one another so connected that they may be fairly said to be interdependent. Of course, this rule is not so rigid as to be absolutely unyielding in the face of a suggestion contained in the writing itself that it is not complete, or of circumstances which call for the application of a well-defined exception to the rule that 'a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.' (Civ. Code, sec. 1647.) This is so, we apprehend, because while ordinarily the subject matter and identity of the parties to several instruments will be disclosed by a reference to the instruments themselves, nevertheless, 'the question of whether or not several instruments between the same parties were . . . intended . . . to cover a single transaction ofttimes cannot be ascertained from an inspection of the instruments themselves, and, consequently, if the intention of the parties be either not expressed or doubtfully expressed, resort may be had to extrinsic evidence which will show the circumstances under which the several instruments were made for the purpose of ascertaining the intention of the parties concerning the scope and effect of the several instruments,'' citing *Torrey* v. *Shea, supra.* (See the very recent case of *Stern* v. *Sunset Road Oil Co. et al.,* 47 Cal. App. 334, [190 Pac. 651], holding that the intention of the parties is the determining factor in the ascertainment of whether a contract evidenced by several or separate writings is or is not divisible. See, also, upon the same proposition, *Richter* v. *Union Land & Stock Co.,* 129 Cal. 367, [62 Pac. 39]; *Sterling* v. *Gregory,* 149 Cal. 117, 120, [85 Pac. 305]; *Los Angeles Gas & Elec. Co.* v. *Amal. Oil Co.,* 156 Cal. 776, 779, [106 Pac. 55].)

While the precise question before us was not, as we judge from the opinion therein, before the court in *Sterling* v. *Gregory, supra,* nevertheless, the court (Mr. Justice Sloss writing the opinion) used this significant language: ''It must be remembered that the question whether a contract is entire or whether its various stipulations are to be regarded as severable is a question of construction. The court seeks to determine the *intent of the parties from a consideration of all the circumstances surrounding the making of*

*the contract."* In that case, Judge Sloss approves the following from *Wooten* v. *Walters,* 110 N. C. 251, [14 S. E. 734, 736], characterizing it as a sound statement of the rule: "A contract is entire, and not severable, when by its terms, nature, and purpose it contemplates and intends that each and all of its parts, material provisions and the consideration, are common each to the other and interdependent. . . . On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or r.ore parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. . . . It is sometimes difficult to determine whether the contract is entire or severable in such cases, and there is a great diversity of decisions on the subject, but on the whole, the weight of opinion, and the more reasonable rule would seem to be that where there is a purchase of different articles at different prices at the same time, the contract would be severable as to each article, unless the taking of the whole was rendered essential either by the nature of the subject matter or by the act of the parties. This rule makes the interpretation of the contract depend on the intention of the parties as manifested by their acts and the circumstances of each particular case."

How all the "circumstances surrounding the making of the contract" or the acts of the parties "and the circumstances of each particular case," other than the mere act of executing the contract and the "circumstances" as exhibited by the writing itself, may be shown otherwise than by evidence extrinsic to the writing itself, it would, indeed, be difficult to point out.

Counsel for appellants contend, however, that the case of *Torrey* v. *Shea* is different and therefore to be differentiated from the present case in that the complaint of the plaintiffs in the former specifically pleaded a collateral contemporaneous agreement to the effect that the several instruments there involved should constitute but a single and indivisible contract covering a single transaction, etc., whereas, so it is likewise asserted, the complaint in the instant case pleads no such agreement. Counsel for appellant Hall proceed in their brief: "The court, under the issue raised in the Torrey-Shea case, quite properly, in our opin-

ion, admitted the testimony of the defendants to establish the parol agreement alleged. . . : The evidence in *Torrey* v. *Shea* was directed to an issue raised upon allegations made in the amended answer of defendants, in accordance with which allegations the court properly found and which findings were sustained by the evidence," while in the case at bar, having alleged no contemporaneous agreement, the plaintiff "sought rather, so it appears from the complaint, to rely upon a construction of the contracts." With this concession, so far as appellant Hall is concerned, the point sought to be maintained is surrendered, if it may justly be said that the complaint does tender an issue upon the question of the making of such an agreement, and we think, as before suggested, that it sufficiently does so, in view of the silence of the instruments themselves upon that proposition, in the allegations "that said separate instruments for each year are and were not distinct and severable; that the consideration expressed in each of said separate instruments is and was not distinct and severable; that the consideration entering into each of said separate instruments was the agreement to buy and sell said hops for said three years as set forth in said instruments." (Par. 3, *supra.*)

We have carefully examined the cases cited by counsel for the respective appellants as supporting their position that it was error to permit proof of the parol collateral agreement in question, and we find none of them in point. Nothing can be gained by reviewing those cases herein. It will be sufficient to say that in all the cases of those cited in which an attempt was made by evidence *dehors* the writings themselves to add to them some term or terms not expressed or provided therein or to vary or change the terms of the instruments themselves, it was with eminent propriety held that to permit testimony having that effect would involve a violation of the rule interdicting the modification of the terms of a written agreement by parol. But, as pointed out in the outset of this discussion, that is not this case. The evidence offered and received here was not for the purpose of varying the terms of the instruments, nor could it have that effect. The vital terms of the agreement, as stated above, were the agreement to sell the crops produced by plaintiff for the years and at the prices therein mentioned and the agreement of Wagner to make certain

specified advancements to plaintiff to enable him to culti-
vate and harvest the crops. As to *these* terms, the instru-
ments themselves, upon their face, were couched in such
terms as to import a complete legal obligation, and not
characterized by any uncertainty as to the object and extent
of the engagement. Of course, as to those vital terms, it
is to be presumed that the whole engagement of the plain-
tiff and Wagner and the extent and manner of their under-
taking are embodied in the writings. (*Seitz* v. *Brewers'
R. M. Co.*, 141 U. S. 510, [35 L. Ed. 837, 12 Sup. Ct. Rep.
46, see, also, Rose's U. S. Notes]; 1 Greenleaf on Evidence,
sec. 275; Jones on Evidence, sec. 439.) The evidence ob-
jected to here, however, as before pointed out, was intended
merely as in aid of the solution of the question, not whether
the terms of the agreement as expressed in the writings
themselves were or were not what the parties agreed that
they should be, but whether (the instruments being silent
as to that matter) it was or was not the intention of the
parties that the subject matter of the three separate writings
should involve or relate to and cover but a single transaction
and the instruments themselves were to constitute a single
contract, and also to show whether the fact of making a
three-year indivisible contract was or was not the control-
ling reason (not the consideration he was to receive for the
hops under the agreement to sell and deliver the same to
Wagner) which induced him to enter into the agreement
to sell the hops for the consideration expressed in the writ-
ten instruments; in other words, whether, but for the agree-
ment that the contract should be a single one and indi-
visible for the three years' crops, he would have entered
into the contract at all for the sale of the hops on the terms
expressed in the three instruments.

[5] It is deemed appropriate to consider in this con-
nection whether the testimony allowed under the ruling
last above considered is sufficient to support the finding that
the parol contemporaneous agreement referred to was en-
tered into or had between plaintiff and Wagner. The ap-
pellants contend that it was not.

The plaintiff testified that, in the first conversation with
Wagner, which was held over the telephone, the latter pro-
posed to him (plaintiff) a contract for one year's crop, to
which plaintiff demurred, saying that he would not enter

into such a contract unless it embraced the crops for three
years. This conversation occurred two or three days prior
to the day on which the three instruments were executed.
Subsequently, Wagner again called plaintiff on the phone
and said: "I have something else for you; we have an offer
that might interest you." The plaintiff asked for the
nature of the new offer, and Wagner replied: "I have two
more years offer. We have fifteen and sixteen cents." The
following morning plaintiff and Wagner, by prearrange-
ment, met at a business house in the city of Sacramento.
Plaintiff then stated to Wagner that he wanted sixteen cents
per pound for his hops for three years, but Wagner was
willing to offer fifteen cents per pound. Plaintiff thereupon
offered to enter into a contract for three years upon the
basis of sixteen cents per pound for the first and second
years and fifteen cents for the third year, to which propo-
sition Wagner assented. Wagner thereupon proceeded to
prepare the agreement upon the stereotyped printed forms
generally used by hop-buyers for such contracts, and, observ-
ing that he was making out a separate contract for each
year covered by their agreement, the plaintiff said to the
former: "Mr. Wagner, this is a three-year deal," to which
Wagner explained that the form of contract he had was
not large enough to insert "all the dates, different prices,
for the different years. While," continued Wagner, "this
is a three-year deal, we will put them on different forms
for convenience sake." With this understanding—that is,
that it was to be a "three-year deal"—the plaintiff con-
sented, for the sake of convenience, to have the agreement
evidenced by the three instruments. This testimony very
clearly and plainly tends to show that the parties entered
into the written engagement with the distinct understanding
and under an agreement that the transaction should and was
to be regarded as one and the three instruments as evidence
of a single, indivisible contract. The trial court, therefore,
having accepted said testimony as revealing the truth
of the transaction in that particular was warranted in
making the finding that the transaction involved but a single,
indivisible contract for the sale and purchase of the hops
for three years.

It is not necessary to present herein the testimony upon
which the court predicated findings 18 and 19. It is enough

to state that an examination of said testimony has convinced us that from it the court was authorized, in the exercise of its discretion as to the weight or evidentiary value of the testimony, to conclude as a matter of fact that the failure or refusal of Wagner to advance the $500 involved a refusal by him to perform the contract; that said sum, if advanced as agreed, would have enabled the plaintiff to harvest the remainder of the crop; that plaintiff, although making an effort to do so, was unable to secure from any other source the loan of $500, to be used in harvesting the remainder of the crop; and that as a result thereof 450 bales of hops were destroyed and lost by reason of having been required to remain on the vines and unharvested; that the detriment thereby sustained by plaintiff amounted in damages to the sum of $9,000; that, before and at the time that Wagner refused to further advance $500, the plaintiff had performed all the terms and conditions of the contract to be done and performed by him, and was ready, able, and willing to perform said contract on his part. Of course, the latter finding must be considered with the other findings, and as so construed must be held to mean that plaintiff was *ready* to perform his part of the contract upon a performance by Wagner of the terms of the covenant of the agreement as to advances.

The finding that there was a mutual cancellation of the contract by the parties derives support from the testimony of the plaintiff that, after demanding from Wagner the $500 referred to on several different occasions, on each of which Wagner stated to plaintiff that he (Wagner) could not raise that sum, the two met, when plaintiff thus addressed Wagner: "Mr. Wagner, if you do not give me that $500, that breaks the contract," to which Wagner replied: "I know it does. I cannot raise the money. I cannot help it—hops are very cheap, anyhow." Later (in the month of September) plaintiff met Wagner, when this conversation took place between them: Wagner: "Hello, Paul, I hear you are going to bring suit against me." Plaintiff: "Well, I ought to. I lost three or four hundred bales on your account, breaking this contract." Wagner: "Do so, by all means. I want you to bring suit against me. I know you lost quite a number of bales." The plaintiff continued: "It was some time in September (1918). I do not know exactly

when. I met him [Wagner] at Faust and McGinnis' saloon. . . . I asked Mr. Wagner about the other two contracts. He says: 'They are a dead issue. They canceled themselves.' " (It may here be suggested that Wagner's statement to plaintiff that he wanted the latter to bring suit against him [Wagner] may be accounted for by the fact that prior to the above-mentioned conversation Wagner had formally assigned the contract to Fraser, who, as seen, was the real vendee in the contract of sale, Wagner having acted for Fraser in the making of the contract and the latter having actually furnished the money for the advances provided for.) As heretofore stated, the plaintiff made no move looking to an enforcement of the contract and did not, and has not, asked for damages for its breach. His present action marked the first step he took respecting the broken engagement, and this move was made only after it was made known to him that Wagner, after there was a rise in the price of hops, assigned the different instruments constituting evidence of the agreement and thus indicated that he intended to maintain that the agreement still existed and imposed a valid and binding obligation upon the plaintiff. From the testimony and the other considerations thus adverted to we do not doubt but that the court was well within the evidence in finding that the contract was mutually canceled by the parties.

[6] The point that the refusal by Wagner to advance the said $500 did not constitute a breach of the agreement is founded upon the following situation: The plaintiff, as has already been shown, had, prior to the making of the contract with Wagner, entered into a similar contract with a hop-buying firm known as Uhlmann & Co., whereby he was to sell and deliver to said firm approximately 60,000 pounds of the 1918 crop. This contract was, of course, prior in right to the Wagner contract, and the latter was entered into by Wagner with full knowledge of that fact. It is contended that the evidence shows that the moneys already advanced to plaintiff under the Wagner contract were used and that the $500 which defendant Wagner refused to advance would also be used in harvesting the hops which were sold and to be delivered to Uhlmann & Co., and that plaintiff was not entitled under the Wagner contract to the further advance of $500 to be used for that purpose. It is

hence argued that the refusal by Wagner to advance said sum of $500 did not involve a violation of the Wagner contract.

There is no merit in the point or the argument. As stated, Wagner, when he entered into the contract with plaintiff, knew of the existence of the Uhlmann contract and was presumably familiar with its terms. He did not, therefore, enter into the engagement with plaintiff under any misapprehension or in ignorance of the situation as it was created by the Uhlmann contract. Moreover, there is no express provision in his contract with plaintiff requiring the moneys he agreed to advance to the latter to be exclusively used in harvesting the portion of the hops that were to be delivered to him, and there is nothing in the terms of the agreement justifying the implication that such was the understanding. The agreement merely provides in general language that the defendant should advance to plaintiff a specified maximum sum of money for the purpose of enabling the latter to cultivate and harvest the hops to be produced by him, and in view of the fact that Wagner, when he made the agreement with plaintiff, had knowledge of the existence of the Uhlmann agreement, and its priority over his agreement, would seem to warrant the implication that the agreement to make the advances was made with the intention that the moneys so advanced should and would be used in harvesting plaintiff's entire crop for 1918.

It is lastly contended that the defendants Hall and Merkeley purchased and paid a valuable consideration for the contract in question without knowledge of the parol collateral agreement referred to, and it is insisted that as to them the rule or maxim, "when one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" (Civ. Code, sec. 2543), is to be applied. The contention, manifestly, involves the claim of an estoppel *in pais* as against the plaintiff.

There are several distinct answers to the proposition. [7] The first is that estoppel is not pleaded by either Hall or Merkeley, and "it is, therefore, not properly in the case." (*Napa Val. Pkg. Co.* v. *San Francisco etc. Funds,* 16 Cal. App. 461, 466, [118 Pac. 469, 470]; *Chapman* v. *Hughes,* 134 Cal. 641, [58 Pac. 298, 60 Pac. 974, 66 Pac. 982].) [8] Again, as to defendant Hall, it is to be ob-

served that the assignment to him recites that the consideration therefor was the sum of one dollar, and the presumption is that that amount was the actual sum paid by him for the assignment. (13 Cyc. 613; Devlin on Deeds, sec. 817; *Kinsell* v. *Thomas,* 18 Cal. App. 683, 692, [124 Pac. 220].) Indeed, it was admitted and stipulated by Hall that one dollar only was the amount which was paid by him to Wagner for the assignment. Obviously, Hall cannot be said to have been "pecuniarily prejudiced" by the transaction, even if it were true that he was lured into purchasing Wagner's rights under the contract through the negligence or conduct of the plaintiff. The assignment to Merkeley, however, does not, save in general terms, state the consideration therefor, it merely reciting, "for a good and sufficient consideration," and no doubt the presumption would be in such case that the consideration was a valuable one. But, assuming that the estoppel has been by pleading properly introduced into the case, the whole question is whether said defendants were induced to enter into the transaction through any act or words or conduct or negligence of the plaintiff. The findings and the evidence upon which they were predicated disclose, as has been shown, that the defendant Wagner broke the contract, repudiated it and refused to proceed with it, and that the plaintiff did nothing toward compelling its enforcement until Wagner later made the assignments in question. What else could the plaintiff have done but to sue for damages for the breach of the contract, if he had elected to stand upon it? He merely treated Wagner's renunciation of the contract as a termination of it, and allowed the matter thus to stand until Wagner undertook to revive it. There is no testimony of any acts or words of his indicating that he regarded or intended to treat it as a binding obligation after Wagner refused to proceed with it. If the agreement had been recorded or was of record at the time of its breach and repudiation by Wagner, and plaintiff had failed to take steps before the execution of the assignments in question to have it canceled or annulled because of the termination thereof, then a different question might be presented. But at the time of the breach of the agreement none of the instruments evidencing its terms had been or was of record, and presumably in view of that fact and his acquiescence

in the termination of the contract by Wagner, the plaintiff intended to allow the transaction to stand that way and to treat the entire contract, as Wagner expressed it, as "a dead issue." We cannot see how it can be successfully maintained upon this record how Hall and Merkeley could have been misled to their prejudice, or at all, by any act or conduct of plaintiff. On the other hand, it seems to be clear that they themselves were negligent when entering into the transaction. The fact that the contract and mortgage (that is, the instrument covering the 1919 crop) which was executed on the twentieth day of February, 1918, was not recorded until December 18, 1918, and the only one of the three several writings that was recorded was sufficient to put Hall and Merkeley upon inquiry as to the status of the engagement between Wagner and plaintiff. They did not receive their respective assignments until January, 1919, and being, as the record shows, hop-raisers and buyers, it would seem that so important a circumstance as a failure to record a contract, which also operated as a mortgage, for so long a period would at once have suggested to their minds the necessity for a full inquiry into the transaction between plaintiff and Wagner before purchasing and paying for Wagner's rights therein; and had they done so, they certainly would have learned of the true situation as to said transaction and thus have saved themselves whatever of damage or detriment they may now be required to suffer. But, at any rate, even if it were true that a lack of diligence cannot be imputed to Hall and Merkeley, it is plain that if they have been imposed upon to their pecuniary detriment in the transaction it was due to no conduct or negligence of the plaintiff, but rather to the failure of their assignor to reveal to them, before executing to them the assignments, the true state of affairs between the latter and plaintiff as it is to be gathered from the evidence and the findings.

There are some other points involving certain rulings of the court upon evidence which, after a careful consideration thereof, we have concluded are not of sufficient importance to require special notice thereof herein.

The judgment in Civil No. 2264, *Peterson* v. *Wagner and Merkeley et al.,* is affirmed.

Prewett, P. J., *pro tem.,* and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1921.

All the Justices concurred, except Wilbur, J., who was absent.