[Crim. No. 4294. In Bank.—August 20, 1940.]

THE PEOPLE, Appellant, v. C. F. MULHOLLAND, Respondent.

Earl Warren, Attorney-General, J. Q. Brown, Deputy Attorney-General, F. C. Clowdsley, District Attorney, and Maxwell M. Willens, Assistant District Attorney, for Appellant.

E. H. Zion for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Third Appellate

District. Upon further consideration of the issues, we are satisfied that the following opinion of Mr. Justice Tuttle is a correct determination thereof, and we therefore adopt that opinion, with certain additional comments, as the opinion of this court:

''The defendant is charged by the amended information on file herein on two counts of violations of section 1273 of the Agricultural Code in the first count, of acting as a commission merchant, and in the second count, as acting as a dealer without having procured licenses as required by section 1261 of said code.

''The defendant filed a demurrer alleging as to both counts that the superior court of San Joaquin county was without jurisdiction of the offenses, and as to the second count, that said section of the Agricultural Code defining a dealer and requiring a license by a person acting as such is unconstitutional.

''It is shown by the pleadings and by the stipulation on file herein that the alleged offenses arose in Ripon township in San Joaquin county; that the justice's court of said Ripon township is one of class 'B' jurisdiction as defined by section 1425 of the Penal Code; that elsewhere in said county, to-wit, at Stockton, California, there is a justice's court of class 'A' jurisdiction, to-wit, the justice's court of Stockton township.

''The court sustained the demurrer on each of said grounds and the People appeal from each of the said rulings. The decision of the court is necessarily based upon the view that the jurisdiction of the justice's court of Stockton township extends throughout the county to the exclusion of the superior court.

''Article VI, section 5, of the Constitution vests the exclusive jurisdiction of all felonies in the superior courts, as well as all misdemeanors not otherwise provided for by the legislature. It has been definitely held that the legislature may vest the jurisdiction of all misdemeanors in inferior courts established by the legislature within the county, the effect of which is to entirely deprive the superior court of jurisdiction of all misdemeanors within the county. (*In re Luna,* 201 Cal. 405 [257 Pac. 76]; *In re Leave and Huggins,* 99 Cal. App. 645 [279 Pac. 157].)

"The present statutory provision fixing the jurisdiction of justice's courts is found in section 1425 of the Penal Code as amended in 1933, providing as follows:

" 'The justices' courts have jurisdiction as follows: 1. Justices' courts of Class A shall have jurisdiction exclusive of that of any municipal court established in the county, in all criminal cases amounting to misdemeanor only, except those of which the juvenile court is given original jurisdiction. 2. Justices' Courts of Class B shall have jurisdiction in all criminal cases amounting to misdemeanor only, punishable by fine not exceeding one thousand dollars, or imprisonment not exceeding six months, or by both such fine and imprisonment.' (Added by Stats. 1905, p. 705; amended by Stats. 1929, p. 861; Stats. 1933, p. 1454.)

"The punishment prescribed by section 1273 of the Agricultural Code is as follows:

" ' (1) Any person is guilty of a misdemeanor and is punishable by a fine of *not more than one thousand dollars, or by imprisonment in the county jail for not more than one year, or by both,* who assumes or attempts to act as a commission merchant, dealer, broker or agent without a license. . . . '

"The first question presented is whether, where a Class 'A' justice's court is established in any township of the county, that court has exclusive jurisdiction over a criminal offense which is within its subject-matter jurisdiction under the provisions of section 1425, subdivision 1, of the Penal Code, or whether the superior court of such county has such exclusive jurisdiction. In other words, is the jurisdiction of such justice's court county-wide in respect to a high misdemeanor where there is no municipal court within the county?

"If the foregoing question were asked in respect to the *civil* jurisdiction of that justice's court, the answer would be in the affirmative. This was so decided in the case of *Cambra* v. *Justice Court,* 4 Cal. (2d) 445 [49 Pac. (2d) 1121, 1122]. It was there held that 'the establishment of the Justice's Court of Class A in Santa Ana Township with jurisdiction over demands, such as the claim for damages here involved, amounting to (less than) $1,000.00, ousted the Superior Court of Orange County of jurisdiction of the cause. The Justice's Court of Class B in Huntington Beach Township, limited in this class of cases, to demands of $300.00, cannot take jurisdiction. The Superior Court of the county, having been de-

prived of jurisdiction of such causes, the proper and only court for the trial of the cause now in the county is the Justice's Court of Class A, established and functioning in Santa Ana Township, the respondent here.' The amount in controversy in the case was $583. The court goes on to say: 'The purpose of the creation of municipal and justice's Courts of Class A was primarily to relieve the calendars of the Superior Courts in counties wherein such courts are created.' Civil jurisdiction of class A justice's courts is defined in section 112 of the Code of Civil Procedure. In respect of the character of action involved in the Cambra case, its subject-matter jurisdiction is thus defined: '(a) In all cases at law in which the demand, exclusive of interest, or the value of the property in controversy, amounts to one thousand dollars or less. . . . ' There is nothing whatever said about jurisdiction outside the township in which the court is created— county-wide jurisdiction. There is no territorial limitation whatever now in this state in respect to any justice's court. Prior to the amendment of section 1425 of the Penal Code in 1929, that section read as follows: 'The Justices' Courts have jurisdiction of the following public offenses committed *within the respective counties* in which said courts are established. . . . ' This territorial designation is now entirely deleted from said section, and has been since 1929. Likewise, as to *civil* jurisdiction, section 106 of the Code of Civil Procedure formerly provided that 'The civil jurisdiction of the Justices' courts extends to the limits of the townships in which they are held'. This section was repealed in 1933. Stats. 1933, p. 1835.) Section 112 of the Code of Civil Procedure and section 1425 of the Penal Code define subject-matter jurisdiction only, and do not mention territorial jurisdiction. We see no valid reason why there should be any difference in this respect between the rule in a civil case and the rule in a criminal case. The purpose for the creation of such justices' courts (class 'A'), as given in the Cambra case—the relief afforded to the superior court—is an equally potent argument when applied to a criminal case. If county-wide jurisdiction is to be applied in the one case, it should likewise be applied in the other.

"Appellant relies chiefly upon two cases. The first is *Antilla* v. *Justices' Court*, 209 Cal. 621 [290 Pac. 43], decided June 19, 1930. There, the question presented was whether

a justices' court (now designated in section 1425 of the Penal Code as a class 'B' court), had county-wide jurisdiction, or whether its jurisdiction was confined to the territorial limits of the township in which it was situated. The court held with the latter contention, upon the ground that the legislature, by omitting the provision of section 1425 of the Penal Code, giving the justices' court county-wide jurisdiction, in the reenactment of said section in 1929, showed an intent to restrict the jurisdiction to the limits of the township. When the last-mentioned section of the Penal Code was originally enacted in 1905 (Stats. 1905, p. 705), there was but *one class* of such courts—now designated as class 'B'. Class 'A' courts (though not under that designation), were not established until 1929. (Stats. 1929, p. 861.) The Antilla case may be therefore distinguished from the instant case for the reason that the legislature could only have had *Class 'B'* courts in contemplation when it fixed the territorial jurisdiction of justices' courts, and when it omitted the county-wide jurisdiction clause in 1929, it could not be said that such repeal indicated any intention to limit the jurisdiction of class 'A' courts, for the reason that class 'A' courts were not established prior to such repeal.

"The second case relied upon by appellant is *In re Birdwell*, 112 Cal. App. 19 [296 Pac. 312]. Like the Cambra case, that action originated in Orange county, in 1931. At *that* time section 1425 of the Penal Code set up two classes of justices' courts, and defined the subject-matter jurisdiction of each. The first class was townships having a population of over 30,000. The second class was those townships whose population was under 30,000. Such classes are, under the present section, known as class 'A' and class 'B', respectively. The court held that the former courts were restricted in their jurisdiction to the territorial limits of the township in which they existed. The court based its decision upon the Antilla case. We are of the opinion that the Birdwell case was, in effect, overruled by the Cambra case which was decided several years later. We might add that the failure of the legislature to define the territorial jurisdiction of these inferior courts has resulted in considerable confusion and uncertainty which could have been readily obviated, and the necessity of amendment is still obvious.

■ "Summarizing the situation, we find that there is a total absence, in the laws of this state, of any definition of the territorial jurisdiction of our justices' courts. The legislature evidently left the question to be decided by the courts. By the enlargement of the subject-matter jurisdiction of class 'A' justices' courts, and the consequent diminishment of such jurisdiction in the superior courts, the work of the latter has been considerably relieved. As the Supreme Court has said, the purpose of such legislation is 'primarily to relieve the calendars of the Superior Courts'. (Cambra case, above.) We believe that, in the absence of anything to the contrary, it is our duty to construe the law to effectuate that purpose.

■ "Respondent seeks to also uphold the ruling of the trial court upon the ground that the following provisions of section 1261 of the Agricultural Code are unconstitutional:

" 'Subd. (b) Producer. The term producer means any person engaged in the growing or producing any farm product.

" 'Subd. (f) Dealer. The term dealer means any person other than a commission merchant who contracts for or obtains from the producer thereof any farm product except by payment to the producer at the time of obtaining possession or control of the full agreed price of such commodity in lawful money of the United States, etc.'

"Respondent contends that such provisions violate sections 1, 11 and 21 of article I of the Constitution of California, and section 1 of the Fourteenth Amendment to the federal Constitution. Section 1 refers to inalienable rights. Section 11 refers to uniform general laws, and section 21 refers to privileges and immunities. Section 1 of the Fourteenth Amendment refers to deprivation of rights, privileges and immunities by the state. Respondent's whole argument upon this question is based upon his own construction of the sections of the code mentioned above. No authorities are cited to uphold such construction. We quote from his brief:

" 'Section 1261 of the Agricultural Code hereinafter referred to as section 1261 declares that ANY person who is engaged in the business of raising farm products is a producer. In other words, one who buys and sells farm products which he does not raise is a producer if he actually raises one other farm product. To construe it as meaning one who raises the particular product he is about to sell to a dealer, is changing

the meaning of the subdivision, for it certainly states that *any* (notice that word "any") person who produces ANY (notice that word "any") farm product is a dealer. Therefore, if a person is a grower of wheat to sell, who also buys cattle which he fattens and later sells, he is a producer so far as the cattle are concerned under the terms of the subdivision. There is no other construction that can be fairly placed upon it. Such a condition places a burden upon any purchaser as it deprives him of the right to contract freely.'

"We are unable to accept such construction of the law. It is the duty of the courts to construe such enactments in the light of reason. The law was intended to protect the farmer in disposing of his *products*—something which he raised upon the farm, whether it be livestock or crops. The very word 'producer' carries that implication. By the term 'dealer' is meant one who contracts or obtains such products so raised. If a farmer who raises wheat buys stock for the purpose of resale, he does not produce such stock, and one who purchases it from him is not a dealer under the Agricultural Code, which defines a 'dealer' as one 'who contracts for or obtains from the *producer* thereof possession or control of any farm product'. Adopting this construction of the code sections mentioned, we cannot say that they are in violation of the constitutional provisions mentioned, and this seems to be the position of respondent."

In approving the foregoing conclusions reached by Mr. Justice Tuttle on the issue of jurisdiction, we desire to call particular attention, as he has, to the grave need for legislative action in this field. It is not the function of an appellate court to define the jurisdiction of trial tribunals, and the necessity of discovering the legislative intent from a vague phrase, or from a consideration of matters of convenience, is an indication of an unsatisfactory state of the law. This is particularly true where the uncertainty is on such fundamental questions as those relating to jurisdiction over criminal offenses.

The judgment for the defendant on the demurrer is affirmed.