[Crim. No. 536. Fourth Appellate District.—November 20, 1940.]

THE PEOPLE, Respondent, v. C. R. MONTGOMERY, Appellant.

Harold A. McCabe for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

MARKS, J.—Defendant was charged, under the provisions of section 1273 of the Agricultural Code, with the crime of acting as a commission merchant on September 27, 1939, without having first secured a license as required by the provisions of section 1263 of the same code. He was found guilty and has appealed from the judgment and from the order denying his motion for new trial.

Miss Ruth Jenkins was a grower of grapes in Kings County, California. She entered into the following contract with defendant:

"SHIPPING AGREEMENT

"THIS AGREEMENT, entered into this 27th day of September, 1939, by and between C. R. MONTGOMERY, herein-

after called the shipper; and, RUTH JENKINS, hereinafter called the grower:

"The shipper guarantees an advance of Twenty Dollars ($20.00) per ton roadside, on minimum of ONE HUNDRED TONS (100) and maximum TWO HUNDRED FIFTY TONS (250) of muscat grapes—U. S. No. 1. Juice.

"The shipper agrees to haul and enclose said grapes in car at a cost of not more than $10.50 per ton. Above $30.50 per ton, shipper and grower agree for a fifty-fifty division on net profit.

"Signed this 27th day of September, 1939:

"RUTH JENKINS<br>
Grower

"(9/27/39)                  "C. R. MONTGOMERY<br>
                                     Shipper"

It is admitted that the contract was actually signed on October 2 or 3, 1939, and that at least two cars of grapes had been delivered and shipped before either of those dates. It is also admitted that defendant had no license to act as a commission merchant, although he had a dealer's license effective September 1, 1939, and a broker's license effective November 5, 1939. About 131–1/2 tons of grapes were shipped for Miss Jenkins.

It was the theory of the People during the trial, and it is now their theory, that the defendant, on or about September 27, 1939, solicited from Miss Jenkins, the producer, her crop of Muscat grapes for sale on commission; that he was not then licensed as a commission merchant; that his crime was complete when he solicited the grapes. (Subd. e, sec. 1261, and subd. g, sec. 1273, Agricultural Code.)

A careful study of the record discloses that the defenses urged during the trial were: That the grapes were shipped and marketed through and by Pacific Coast Fruit Distributors, which corporation was licensed as a commission merchant; that they were to be so shipped was known to Miss Jenkins at the time defendant solicited the grapes from her; that most of the grapes delivered after the contract was signed were graded U. S. No. 2 Juice instead of U. S. No. 1 Juice as provided in the contract so that the contract was in reality abandoned and nothing was actually done under it.

Defendant now argues that he was in fact acting as agent for Pacific Coast Fruit Distributors; that this was known

to Miss Jenkins at all times material here; that he neither solicited the grapes nor contracted for them for himself but for his disclosed principal; that as his principal was licensed and as this was disclosed to Miss Jenkins the solicitation was in law by the principal and delivery was made to it; that, therefore, defendant did not act as a commission merchant.

Defendant urges that he was deprived of this, his only defense, by rulings of the trial court on objections to questions put by him, and in the refusal of the trial court to grant a continuance to enable him to secure the presence of two witnesses by whom he expected to establish it.

Whether or not the defense now sought to be urged would have been legally sufficient need not be decided here. Our study of the record has convinced us that it was not urged in the trial court and cannot, under the record, now aid defendant.

When the contract we have quoted was offered in evidence, counsel for defendant made the following objection to it: "If the Court please, I want to object to the offer at this time merely for the purpose of laying the foundation to later show that the agreement was not carried out or entered into. I want to—I am making the objection to its introduction at this time on the grounds that the agreement never went into effect. Of course, that is not before the Court, but I want to be in position to show that at a later time and not be precluded by not making my objection at this time."

Defendant complains because the trial court sustained an objection to the following question asked of Miss Jenkins on cross-examination: "And didn't you know on October 2nd, when you signed that contract, and before that time, that these grapes were being shipped by the Pacific Coast Fruit Distributors?" During the argument on the objection counsel for defendant stated: "If the Court please, I made objection to that agreement on the ground that I wanted to be able to show that that agreement never went into effect. . . . I think we have the right to go into who is actually the party to that agreement, and propose to show who those grapes were shipped through, that Miss Jenkins knew all about it all the time, that she even went farther than that and checked up at her bank to determine the financial responsibility of the parties to whom the grapes were being shipped, and was satisfied with that check, and that they were shipped

by a regularly licensed commission merchant, broker and dealer.''

T. R. Sunshine, president and manager of Pacific Coast Fruit Distributors, was subpoenaed as a witness but was not present at the trial. A continuance was asked and counsel for defendant made the following proffer of proof: ''We offer to prove by Mr. Sunshine that he handled all of the grapes of Miss Jenkins, that he was a licensed dealer, commission merchant, a broker, and that that was handled, they were handled by him through an agreement or understanding with Mr. Montgomery and that all the cars were shipped by him from Hanford to various points, that he sold them and accounted for the entire proceeds thereof. . . . And that he authorized Mr. Montgomery, through the S. P. Railroad to sign the name of Pacific Coast Fruit Distributors to the bills of lading offered in evidence by the defendant and marked for identification.''

The absence of A. M. Bruce was made one of the grounds of the motion for the continuance. The following proffer of proof was made: ''I offer to prove by Mr. Bruce, A. M. Bruce, that he had informed Miss Jenkins, Miss Jenkins understood before any grapes were shipped or disposed of, that they were to be handled through Pacific Coast Fruit Distributors, shipped by them, returns made by them.''

Many more quotations could be made from the record to the same effect. Much of the documentary evidence offered by defendant but excluded by the trial court strongly negatives the theory that in negotiating for the grapes defendant was merely acting as agent for Pacific Coast Fruit Distributors, a disclosed principal. There are four checks for three hundred dollars each, payable to Miss Jenkins, signed by defendant individually and not as an agent. Two of them were cashed. There are several inspection certificates in which defendant is named as the shipper.

Defendant called the bookkeeper of the Pacific Coast Fruit Distributors as his witness. She testified that ''Pacific Coast Fruit Distributors handled some grapes in which the defendant, C. R. Montgomery, was interested, that came from Hanford,'' . . . that the Pacific Coast Distributors ''do not purchase grapes'' that its ''dealings were solely with Mr. Montgomery''.

We can find no error in excluding evidence that the grapes were shipped *through* or *by* Pacific Coast Fruit Distributors as that evidence had no bearing on the real issues presented to the trial court nor has it any bearing on the question now argued, namely, that in contracting for the grapes defendant did not act for himself but as agent for Pacific Coast Fruit Distributors, his disclosed principal. Admitting that the grapes were shipped *through* or *by* that corporation would not of itself establish any such agency any more than proof of which particular common carrier was employed to transport them would have shown that the carrier was a principal and defendant its agent. The testimony expected to be elicited from Mr. Sunshine and Mr. Bruce would have had no greater effect.

Subdivision "e" of section 1261 of the Agricultural Code contains the following: "The term 'commission merchant' means any person who shall receive on consignment or solicit from the producer thereof any farm product for sale on commission on behalf of such producer."

Section 1263 of the same code makes it unlawful for anyone to act as a commission merchant without first having procured a license so to do. Section 1273 makes it a misdemeanor for anyone to fail to comply with the provisions of the chapter containing those sections.

It is clear that in so far as this case is concerned the necessary elements of the offense charged are, the solicitation of the grapes from Miss Jenkins for sale on commission, and the failure of defendant to have a license at that time to act as a commission merchant.

These elements were both proved beyond a reasonable doubt and without conflict in the evidence. Because he expected to ship the grapes *through* or have them shipped *by* a licensed commission merchant had no bearing on his act of solicitation. Of itself such intention would not even tend to prove that in soliciting the grapes he was acting as agent for a disclosed principal or that the act of soliciting was in effect the act of the supposed principal.

When questions are asked of a witness there can be no error in sustaining objections to them where there is nothing to indicate to the trial judge that the expected answers might have a material bearing on the issues being tried. As it was not even suggested during the trial that defendant

was, or claimed to be, acting as agent for Pacific Coast Fruit Distributors in his transactions with Miss Jenkins, the trial court properly sustained the objections. If it had been proved that Miss Jenkins knew that defendant proposed to have the grapes shipped *through* or *by* Pacific Coast Fruit Distributors it would have constituted no defense as it would not have tended to establish the agency. The act of shipping *through* or *by* that corporation was all that defendant attempted or offered to prove.

Nor was it any defense to prove that some of the grapes delivered were U. S. No. 2 Juice. More than two of the cars were U. S. No. 1 Juice. That part of the grapes delivered and accepted were below the specified grade might be urged in a civil action but cannot constitute a defense here.

Further, the testimony produced by defendant and the documentary evidence offered by him and excluded shows rather clearly that he contracted for the grapes for himself as the principal and not as an agent for a disclosed principal; that Pacific Coast Fruit Distributors was used to distribute and market the grapes for defendant. Should the judgment be reversed and the case be re-tried, this evidence could be admitted and would be strong against him. This evidence, with that now in the record, would negative any defense of agency. It is evident that there has been no miscarriage of justice so the judgment should not be reversed. (Const., art. VI, sec. 4½.)

The judgment and order denying the motion for new trial are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 5, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 19, 1940. Houser, J., voted for a hearing.