[Civ. No. 15588.  First Dist., Div. Two.  Feb. 15, 1954.]

GEORGE CAPITELLI, Respondent, v. GEORGE H. SAWAMURA et al., Appellants.

Guy C. Calden and Elliot W. Seymour for Appellants.

Dolwig, Davis & Miller for Respondent.

NOURSE, P. J.—This action was based on a claim for damages allegedly caused by defendants' breach of an oral contract.  Judgment went for plaintiff in the sum of $3,892.14, plus 7 per cent interest thereon from December 31st, 1947, and costs of $175.46.  Defendant William Kitagawa filed an

amended cross-complaint alleging that cross-defendant, George Capitelli, is indebted to him in the sum of $1,706.71, and asking for judgment against cross-defendant in that amount plus interest. The trial judge made no ruling on the cross-complaint but in his findings subtracted from the total figure of damages of $5,598.85 amounts equalling $1,706.71, leaving the figure of $3,892.14, the amount of the judgment for plaintiff.

The Kitagawa Nursery was owned by William and Reo Kitagawa. In 1941 William joined the army leaving the management of the nursery to Reo and George Sawamura, an employee. In 1942 they were sent to a relocation camp. Reo was the first to leave; the leasing of the nursery was left to George Sawamura. It was alleged in the complaint, which allegation the trial judge found to be true, "That on or about the 9th day of April, 1942, plaintiff, as lessee, and George H. Sawamura, one of the defendants, as lessor, entered into a lease by the terms of which plaintiff obtained the exclusive possession, use and occupancy of the said premises, . . . for a term commencing with the date thereof and ending the 2nd day of January of the year next succeeding the year in which the said defendant would return to San Mateo County, California, ready, able and willing to resume his operation of a nursery and flower business under the name of Kitagawa Nursery; that on or about March 12, 1942, the defendant, Reo Kitagawa, consented in writing to the execution of said lease and on or about April 27th, 1942, the defendant, William Kitagawa, also consented in writing to the execution of said lease."

Under the terms of the lease lessee was to make the monthly payments of $40 due on a loan secured by a deed of trust on the real property and pay the city and county taxes. The pertinent provisions of the lease read as follows:

"2. The term of this lease shall be from the date hereof to and including the 2nd day of January of the year next succeeding the year in which lessor returns to San Mateo County, California, ready, able and willing to resume said business. Upon such return lessor personally shall be obliged promptly to notify lessee of his return and of his willingness and ability to resume said business."

"7. Lessee agrees to keep and maintain said premises and improvements in the same state and condition as they are in on the date hereof, reasonable wear and tear excepted, . . . Lessee further agrees upon the expiration of the term of this

lease to surrender said premises and improvements to lessor in such state and condition, . . .''

In December, 1945, William Kitagawa made demand by letter for return of the premises under the lease stating he was returning to Redwood City and was ready, able and willing to take over the property before January 2, 1946. Also in December, 1945, George Sawamura notified plaintiff by telegram he was returning to the premises. Plaintiff did not surrender the premises until January 3, 1947, when an agreement drawn by plaintiff's attorney was signed by William and Reo Kitagawa, Sawamura and Capitelli. The wording of this agreement would indicate that it was drawn up pursuant to the terms of the lease agreement signed by the parties when Capitelli became the lessee. However, plaintiff alleges in his complaint and testified in court that the only condition under which he would agree to release the property was the making of an oral agreement to supply him with one-half of the gross yield of gardenias, which oral agreement will later be more fully set forth.

The agreement of January 3d, 1947, reads in part:

"WHEREAS the undersigned, George H. Sawamura, Reo Kitagawa and William Kitagawa, by a lease dated April 9th, 1942, leased to the undersigned, George Capitelli, an individual, certain real property together with improvements, . . . upon the terms and conditions as more particularly set forth in said lease; and

"WHEREAS the undersigned, George H. Sawamura, Reo Kitagawa and William Kitagawa, have requested said lessee to surrender the possession of such premises:

"Now THEREFORE, in consideration of the release by the undersigned, George H. Sawamura, Reo Kitagawa and William Kitagawa, of said George Capitelli from each and every of his obligations under said lease, and of the acceptance of this surrender by the undersigned, . . . together with the sum of One Dollar ($1.00) paid to the undersigned, . . . said lessee does hereby grant, assign and surrender said lease to the undersigned, George H. Sawamura, Reo Kitagawa and William Kitagawa.

"The undersigned, . . . in consideration of the premises, does hereby accept said surrender and does hereby release said lessee, George Capitelli, from all obligations and liabilities arising out of or under the terms and conditions of said lease.

.   .   .   .   .   .   .   .   .   .   .   .   .

"By the acceptance of the surrender of this lease the undersigned, George H. Sawamura, Reo Kitagawa and William Kitagawa, acknowledge that the premises . . . have been returned to them in the same state and condition as at the time of the execution of said lease on the 9th day of April, 1942."

Plaintiff alleges in his complaint "That on or about January 2nd, 1947, and while said lease was in full force and effect, . . . a bona fide dispute arose between plaintiff and defendants herein, concerning the duration of the term of said lease, for the reason that lessor had renounced his American Citizenship, and the probable return of lessor 'ready, willing and able' to exercise his right of reentry under said lease, thereby became indefinite and uncertain." (Sawamura was the only one whose status as an American citizen was uncertain. William Kitagawa was the sole owner of the property in January, 1947, Reo having conveyed his interest in the property to William in 1946. There has not been at any time any question of William's American citizenship.)

"That said dispute was settled on January 2nd, 1947, upon the express oral understanding and agreement entered into . . . by and between the parties to this action, that if plaintiff would surrender said lease-hold to defendants, plaintiff would receive from defendants, and defendants would furnish to plaintiff fifty (50) percent of the entire production of flowers which defendants would produce from said premises, during the period from January 3rd, 1947, to and including December 31st, 1947, and providing further that plaintiff would retain as his profit twenty (20) percent commission on the gross sales of said flowers by plaintiff on the open market, plus one (1) percent for advertising expense; that thereupon, and in pursuance of said undertaking and agreement, plaintiff and defendants entered into a written release and surrender of the said lease dated April 9th, 1942. . . ." The trial court found these allegations to be true.

Appellants base their appeal on the following grounds:

(1) The admission of evidence, over objections of defendants, to prove an oral contract was reversible error.

(2) The trial court's failure to find that the alleged oral contract was illegal and void because plaintiff was not a duly licensed commission merchant, dealer or broker dealing in horticultural products was reversible error.

(3) The evidence is insufficient to establish that defendants breached any agreement.

(4) The proof is insufficient to justify the damages awarded by the trial court.

(1) The trial court erroneously admitted testimony in proof of the alleged oral contract over the repeated objections of the defendants. Appellants argue that the release agreement was prepared by plaintiff's own attorney, that if the real consideration for surrender of the leasehold was the agreement to supply flowers to plaintiff, then it should have been made a part of the written agreement for surrender of the leasehold. Plaintiff testified that his attorney had advised him to put the oral agreement into writing but that he "was duly informed by all parties concerned that if that particular phase of the agreement was—went into the release that they wouldn't sign it." It would appear that the defendants did not agree to the oral agreement. Appellants contend that the admission of testimony to attempt to prove such alleged oral agreement violated the parol evidence rule, precluding the admission of parol or extrinsic evidence to add to or vary a written instrument. (Code Civ. Proc., § 1856.) Appellants also cite section 1625, Civil Code, and section 1639, Civil Code, "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, . . ."

Respondent answers that the sections quoted by appellants are qualified by section 1642, Civil Code, "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together," and section 1647, Civil Code, "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Respondent also cites *Peterson* v. *Wagner*, 52 Cal.App. 1 [198 P. 25], to the effect that evidence of a contemporaneous oral agreement, which was the inducing and moving cause for a written agreement, or forms part of the consideration for the written agreement is admissible. However, aside from the testimony of respondent that he surrendered the property only on the consideration of the oral agreement by which the Kitagawas were to furnish him with 50 per cent of their gross output in 1947, which claim the trial judge found to be true, there is no evidence to support respondent's claim that the oral agreement was the "inducing and moving cause for the written agreement." Under the terms of the lease lessee was to relinquish the property upon notification from the lessor that he was ready, willing and able to take back

the property, in January of the year following such notification. If, as respondent contended, he was doubtful of Sawamura's ability to take over the nursery because of his uncertain status as to citizenship, the oral agreement wouldn't cure this difficulty. Sawamura worked in the nursery during the greater part of the year 1946, as did William and Reo Kitagawa, and respondent produces no evidence showing they were not able to take back and operate the nursery. He testified in response to the question: "And you knew in the spring of 1946 that you were going to have to return the possession of the premises to the Kitagawas, did you not? A. I presumed eventually I was going to have to return it to them. It wasn't a question of whether you wanted to or not." ▮ Respondent could not have failed to understand that under the lease agreement he was to relinquish the property within a certain length of time after appellants returned. The agreement of January 3, 1947, effected this release. There was nothing ambiguous or uncertain about it. Therefore, the admission of parol evidence to vary the terms of this agreement was error.

Respondent testified that he expended a large amount of money on the nursery in 1946, that it was a bad year financially and he wanted some return on his investment, which he sought to obtain by the oral agreement. He had replanted some 8,000 gardenia plants in 1946. However, under the terms of the lease he was obligated to return the property in the same condition in which he received it. The nursery, when he took over, was devoted entirely to gardenias; he replanted over half of it with tomatoes and peppers, hence the necessity in 1946 of restoring the gardenia plants at his expense. ▮ Appellants contend that plaintiff may not now be heard to claim as a detriment suffered by him that which he was obligated to do, that there was a complete failure of consideration for the alleged oral agreement upon which his action is predicated. This contention is sound, and it negates any recovery by respondent on the oral agreement.

(2) Lack of license made any oral contract illegal or void. ▮ It is undisputed that respondent had no license as a commission merchant, dealer or broker. To act as such, a license was required under section 1263, chapter 6 of the Agricultural Code. Appellants contend that plaintiff's complaint and testimony that he was to receive the flowers for sale on the open market, respondent to retain a 21 per cent commission, showed that he was acting as a commission mer-

chant, dealer or broker. Section 1261, subdivision (e), chapter 6, Agricultural Code, defines a commission merchant as follows: ''The term 'commission merchant' means any person who shall receive on consignment or solicit from the producer thereof any farm product for sale on commission on behalf of such producer, or who shall accept any farm product in trust from the producer thereof for the purpose of resale, or who shall sell or offer for sale on commission any farm product, or who shall in any way handle for the account of or as an agent of the producer thereof any farm product.'' The records show that plaintiff from the first part of January until about February 22, 1947, received flowers from Kitagawa Nursery, sold them, made weekly reports of sales, remitted proceeds of sales less commission, freight and dumped flowers, which was the procedure followed by commission merchants. Mr. Charles J. Lane, agent for the California Department of Agriculture, charged with enforcement of the provisions of the Agricultural Code, was called as a witness on behalf of the defendants. He testified: ''In my opinion, after listening to the testimony and Mr. Kitagawa's statements to me, I would say Mr. Capitelli was definitely a commission merchant. As a matter of fact when I wrote Mr. Capitelli on September 4th, I stated that to him in my letter.'' Appellants maintain that under circumstances where a license is required, a contract made by an unlicensed person in violation of a statute is void. (*Loving & Evans* v. *Blick,* 33 Cal.2d 603, 614 [204 P.2d 23].) Therefore, appellants rightly conclude that if there was an oral contract it was illegal and void and the trial court erred in not so finding.

Respondent contends that under the oral agreement each of the parties undertook to share the crop on an agreed basis and that in effect he was to receive an agreed division of the crop yield which was the end product of his own capital and labor, and that the sections of the Agricultural Code in question are not here involved. We are not impressed with the contention.

Whether it is determinative of his status in regard to the Kitagawa Nursery, it is worthy of note that respondent was obtaining flowers from 30 or 40 other sources, supplying a number of customers both local and out of state at the time he was handling the flowers from the Kitagawa Nursery. After being contacted by Mr. Lane respondent took out a license in November, 1947, as he was required to have it in his business.

(3)   Evidence is insufficient to establish that defendants breached any agreement.

There was testimony given by both sides that during the month of January and extending to about the 22d of February, 1947, respondent, or one of his employees, would telephone orders to the nursery and pick up the flowers which had been set aside for him the next day.   There is no testimony in the record that defendants refused or failed to supply any gardenia flowers ordered by the plaintiff or his employees.   The last flowers were picked up about the first week in April.   Appellants charge Capitelli never accounted for the flowers received after February 22, 1947, to and including April 5, 1947, when he discontinued receiving flowers and contend that such failure to account and pay the sums owing for the flowers received by him constituted a material breach of the agreement between the parties.   Respondent in his brief makes no answer to this contention.

Appellants claim a further breach of the contract occurred when instead of selling the flowers on the ''open market,'' which meant for the highest price obtainable, as he had agreed, respondent sold the gardenias at $3.50 a dozen to his regular customers at a time when the Kitagawa Nursery was selling the same grade for $7.00 a dozen in the open market.   If we were to hold that the oral contract was valid this would be substantial evidence of its breach.   But with an invalid oral contract this question does not call for discussion.

(4) Proof insufficient to justify damages awarded by the trial court.

The amount of damages awarded by the trial court was based upon 21 per cent of half of the gross sales of the Kitagawa Nursery for 1947.   A referee was appointed by the court, over the objection of appellants, to determine the gross sales of the nursery for 1947.   The figure arrived at by the referee as respondent's share of the proceeds from the sale of the gardenias was $5,598.85.   The trial court accepted this figure and after. allowing credits and setoffs awarded $3,892.14 as the damages suffered by respondent due to appellants' breach of the contract.   ▉   Aside from the fact that no competent evidence supported the amount of the award, such award is founded wholly on the invalid oral contract.   For that reason this part of the judgment must be reversed without regard to the matter of proof.

There is no controversy concerning the propriety of the allowance to William Kitagawa on his cross-complaint though

the findings and the judgment itself are confusing as to that item. However, the respondent did not appeal from that portion of the judgment. There is no question as to the amount due cross-complainant. It is therefore proper to assume that the trial court meant to give him judgment for the amount prayed. For the purpose of a clear record we deem it proper to direct a new and complete judgment.

The judgment in favor of plaintiff is reversed. Judgment is to be entered in favor of William Kitagawa on his cross-complaint for $1,706.71 with interest at 7 per cent from April 5, 1947, and as so entered is hereupon affirmed. All defendants should recover their costs.

Dooling, J., and O'Donnell, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.