[No. F060260. Fifth Dist. Nov. 30, 2011.]

FANTOZZI BROS., Plaintiff and Appellant, v.
SAN JOAQUIN TOMATO GROWERS, INC., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part B. of the Discussion.

## Counsel

Thompson, Welch, Soroko & Gilbert, Darin T. Judd and Eric D. McFarland for Plaintiff and Appellant.

Zumwalt Law Firm, Frank T. Zumwalt and Stephanie Y. Wu for Defendant and Respondent.

## Opinion

**DETJEN, J.**—The primary question presented by this appeal is whether a member of a joint venture that is paid a commission to sell, on behalf of the joint venture, produce raised by the joint venture is a "commission merchant" as defined in Food and Agricultural Code section 56105. (All further statutory references are to this code.) We hold that the trial court correctly concluded

the joint venturer was not a commission merchant because, under the terms of the joint venture agreement, the joint venturer was an owner of the produce he sold. In the nonpublished portion of the opinion, we also conclude plaintiff and appellant Fantozzi Bros. has not otherwise established reversible error. Accordingly, we affirm the judgment entered on a jury verdict in favor of defendant and respondent San Joaquin Tomato Growers, Inc.

## FACTS AND PROCEDURAL HISTORY

Appellant is a general partnership. For several years prior to 2004, appellant grew 75 acres of mature green tomatoes in a joint venture with respondent.[1] Appellant and respondent entered into the same written joint venture agreement for the 2004 growing season. Pursuant to the agreement, respondent was to contribute $600 per acre in cash or materials and supplies. (In this instance, it provided and planted the seedlings.) Appellant was to contribute use of its land, labor, equipment, and supplies to bring the crop to maturity. Respondent was to provide labor to harvest the crop and to process and pack the tomatoes for sale. In addition, respondent was to sell the tomatoes and receive a commission of 6 percent for doing so. After deducting the sales commission and reimbursing respondent for the costs of harvesting, transporting, and packing the tomatoes, appellant and respondent were to share equally the net proceeds.

In addition to other covenants and obligations set forth in the joint venture agreement, the agreement provided the following:

—Title to the tomatoes will pass from the joint venture to respondent "at the time of harvesting said crop of tomatoes, subject to the right to division of proceeds as herein set forth."

—Respondent will be the "sole judge of quality and market conditions and shall have the right to discontinue shipping whenever in its opinion the quality or market conditions do not justify shipment."

—Respondent "will attempt to obtain the best market prices and effect quick sales" and "is authorized to make whatever adjustments or to grant any allowances that in [respondent's] opinion are justifiable or necessary in order that sales be consummated . . . ."

---

[1] According to the testimony at trial, mature green tomatoes reach a level of development at which they will fully ripen after being picked if stored in certain conditions. Tomatoes that have begun to turn red are culled from the packing line and the green tomatoes are treated with ethylene gas so that all tomatoes in a box turn red in the same timeframe after delivery to the customer. The eventual market for such tomatoes, according to the evidence, is fast-food restaurants, which prefer such tomatoes because they are easier to handle and to slice.

Respondent began harvesting the crop at the beginning of November 2004. It rained several days and respondent stopped harvesting the field after about two-thirds of the field had been picked. The five days of harvesting resulted in 662,450 pounds of packed tomatoes.[2] Before harvesting resumed, a hard frost destroyed the remaining crop.

Appellant sued respondent for breach of fiduciary duty and breach of contract. The breach of fiduciary duty cause of action was premised upon allegations that respondent failed to timely harvest the tomato crop, failed to sell the tomatoes at the prevailing market price, refused to permit appellant to harvest the field itself after respondent decided not to timely finish the harvest, and engaged in self-dealing that deprived appellant of legitimate profits. The complaint alleged that the fiduciary relationship arose both from the joint venture contract and from respondent's statutory status as a commission merchant whose duties are established in sections 56271 through 56283.[3] The breach of contract cause of action was premised upon similar allegations concerning the failure to harvest and market the crop, together with an allegation that respondent violated the implied covenant of good faith and fair dealing by "artificially agreeing to below market sales in order to preserve [respondent's] business relationships with buyers, at the expense and in direct breach of its contractual duties" to appellant. Respondent answered and the matter came for jury trial.

Respondent moved in limine to exclude, as relevant here, all evidence that respondent was acting as a commission merchant as defined by section 56105 or that it breached the duties of a commission merchant set forth in sections 56271 through 56283. Appellant opposed the in limine motion in an original and a supplemental memorandum of points and authorities. The trial court noted the joint venture agreement indicated both parties to it were owners of the crop. It then deferred ruling on the motion. Subsequently, the trial court granted the motion, determining that the joint venture agreement did not make San Joaquin Tomato Growers, Inc., a commission merchant as defined in section 56105. Accordingly, the court refused to instruct the jury with numerous instructions proposed by appellant that stated various statutory

---

[2] The tomatoes were packed in 25-pound boxes. The packout reports indicated 26,498 boxes were packed from the joint venture field. The market price for such tomatoes varied from around $7 per box to more than $20 per box.

[3] The complaint alleged that appellant and respondent had "agreed" that respondent "was to act as a commission merchant by taking control of the harvested product and selling it through normal agricultural marketing channels at the highest price and on the best terms available." As such, according to the complaint, respondent had statutory duties to appellant pursuant to sections 56271 (recordkeeping), 56272 (report of sale), 56273 (timely remittance of proceeds), 56273.1 (accounting), and 56283 (care and diligence). In addition to the duties owed a joint venturer, these duties formed the basis for appellant's cause of action for breach of fiduciary duty.

duties of a commission merchant. The refusal to so instruct constitutes the basis for appellant's first contention on appeal.

Appellant also requested the trial court to instruct the jury with CACI No. 325, concerning the required factual elements for a breach of the covenant of good faith and fair dealing. In reliance on the use note for that instruction, the trial court concluded the instruction should only be given when the plaintiff has stated a separate cause of action for breach of the covenant of good faith and fair dealing, which was not the case here. This ruling provides the basis for appellant's second contention on appeal.

After a jury trial lasting more than a month, the jury, by special verdict, determined that respondent did not breach its fiduciary duty to appellant and that respondent did not breach its joint venture contract with appellant. The trial court denied appellant's new trial motion.

## DISCUSSION

### A. *"Commission Merchant"*

Section 56105 states:

" 'Commission merchant' means any person, as follows:

"(a) Who receives on consignment or solicits any farm product from a licensee[4] or producer of the product.

"(b) Who accepts any farm product in trust from a licensee or the producer of the product for purposes of sale.

"(c) Who sells any farm product on commission.

"(d) Who handles any farm product in any way for the account of or as an agent of the consignor of the product. Any person who accepts a farm product from a licensee or the producer of such product for the purpose of sale or resale is a commission merchant, unless the person has bought, or agreed to buy, the farm product by a contract which designates the price to be paid to the seller."

---

[4] A "licensee" (§ 56109.5) is anyone licensed as a broker (§ 56103), cash buyer (§ 56104), commission merchant, or dealer (§ 56107) under Food and Agricultural Code, division 20, chapter 7 (Produce Dealers). A "producer" is "any person that is engaged in the business of growing or producing any farm product." (§ 56110.)

Sections 56271 through 56283 prescribe various duties imposed upon commission merchants. Section 56181 requires that "any person engaged in the business of buying, receiving on consignment, soliciting for sale on commission, or negotiating the sale of farm products from a licensee or producer for resale shall be licensed as provided in this chapter." Acting as a commission merchant (or other type of licensee) without a license is a misdemeanor. (§ 56639.)

Respondent was not licensed as a commission merchant.[5]

Appellant contends respondent clearly meets the statutory definition of a commission merchant by selling farm products on commission. (The parties disagree whether respondent "solicits" farm products from a producer, but alternative bases for considering respondent a commission merchant do not affect the result of our analysis.) Appellant contends the trial court prejudicially erred in refusing instructions that were based upon the statutory duties imposed upon a commission merchant.

Respondent does not dispute the obvious fact that a portion of its share of the proceeds under the joint venture agreement was a commission for selling the tomatoes, but contends it was not a commission merchant because, first, as the trial court concluded, the statute is inapplicable to owners of the product that is sold on commission; second, that the statute is only applicable when the person to be paid a commission receives the produce from a "consignor," as defined by statute; and, third, that it is exempt from the requirements of the commission merchant statutes as a "processor" under sections 55407 and 56161, subdivision (b). It also contends any error by the trial court in refusing the instructions was not prejudicial.

 We do not reach the latter contentions because we agree with the trial court that the definition of "commission merchant" does not include a member of a joint venture who, pursuant to the joint venture agreement, has an ownership interest in the product. This is so even if a portion of the payment that member receives is a commission on the sale of the joint venture's produce.

 There are few judicial opinions interpreting the relevant code sections (and their predecessors under the former Agricultural Code [see former Agr.

---

[5] Respondent was licensed as a "dealer." Section 56107 provides that a dealer is "any person who obtains title to, or possession, control, or delivery of, any farm product from a licensee or producer *at a designated price* for the purpose of resale, or who buys or agrees to buy any farm product from a licensee or the producer of the farm product at a designated price." (Italics added.) The joint venture agreement did not establish a "designated price" for the tomatoes but, instead, established a formula or methodology for determining the amounts to be paid to the joint venturers. Accordingly, respondent was not acting as a dealer in the present transaction.

Code, § 1261]), and most of the cases involve criminal prosecutions for unlicensed activities by produce dealers. In *People v. Mulholland* (1940) 16 Cal.2d 62 [104 P.2d 1045], for example, the defendant was charged with acting as a dealer and a commission merchant without a license. (*Id.* at p. 64.) The primary issue concerned jurisdiction of the justice court to try the case. However, the court also addressed the defendant's secondary claim that, because he grew one crop, he was a statutory "producer" who was, by definition, exempt from licensure as a dealer or commission merchant, even though he was charged with also buying and selling the produce of another person. (*Id.* at pp. 68–69.) The court rejected that position: " 'The law was intended to protect the farmer in disposing of his *products*—something which he raised upon the farm, whether it be livestock or crops. The very word "producer" carries that implication. By the term "dealer" is meant one who contracts or obtains such products so raised. If a farmer who raises wheat buys [live]stock for the purpose of resale, he does not produce such stock . . . .' " (*Id.* at p. 69, original italics.) As to such livestock, the farmer is not a statutory producer. (*Ibid.*) In the present case, the converse of this rule is applicable: where the person selling the product on commission is also the producer, the licensing requirement is inapplicable. ■ Thus, as a joint venturer in the tomato crop, respondent is a statutory producer. As a result, respondent does not meet the requirement for licensure as a commission merchant, namely, one "engaged in the business" of receiving on consignment or soliciting for sale on commission "farm products from a . . . producer for resale . . . ." (§ 56181.) ■ To implement the intent of the statute, as construed in *People v. Mulholland, supra*, 16 Cal.2d at page 69, a seller of produce is required to have a license only where it sells the produce of another producer, not when it sells its own produce.

Although it does not present an exact analogy, some further insight into the statutory scheme may be gleaned from an opinion of the Attorney General concerning the activities of agricultural cooperatives. (See 18 Ops.Cal.Atty.Gen. 266 (1951).) The issue there was whether those who purchase produce from a cooperative association are, for purposes of the statutory licensing scheme, buying from the producer or from a "dealer" (even though, due to a statutory exception, the cooperative would not be required to be *licensed* as a dealer even if it were acting as a dealer). (*Id.* at p. 267.) The Attorney General concluded that, because the cooperative was acting as agent for its members, it retained the same "producer" character as those members. (*Id.* at p. 269.) By similar reasoning, we conclude a joint venturer who acts as sales agent for the joint venture remains a producer if the joint venture would be a producer if it sold the produce directly.

The cases appellant cites in support of its contention that respondent was required to be licensed as a commission merchant (and that, as a consequence, respondent had the duties imposed by statute upon a licensed

commission merchant) are unavailing. The primary case cited by appellant is *Capitelli v. Sawamura* (1954) 123 Cal.App.2d 169 [266 P.2d 939]. In that case, the plaintiff was a holdover tenant of a gardenia farm. (*Id.* at p. 171.) The parties entered into a written release at the time the plaintiff returned the farm to the defendant. (*Id.* at pp. 171–172.) In the following months, the defendant delivered flowers to the plaintiff for resale; the plaintiff was also "obtaining flowers from 30 or 40 other sources, supplying a number of customers both local and out of state." (*Id.* at p. 175.) The plaintiff sued on an oral contract for commissions for the sale of the defendant's flowers. The defendant asserted that any oral agreement for commissions was illegal or void because the plaintiff was not licensed as a commission merchant under the produce dealer statutes. The plaintiff sought to address this defense by claiming the oral contract with the defendant, entered into about the same time as the written release, gave him a 50 percent interest in the current crop of flowers as additional consideration for his efforts in growing the flowers prior to return of the farm to the defendant. (*Id.* at pp. 173–175.) He contended the commission on the sale of the flowers was the "agreed division of the crop yield which was the end product of his own capital and labor, and that the sections of the Agricultural Code in question are not here involved." (*Id.* at p. 175.) Having previously concluded that the oral agreement failed for lack of consideration (*id.* at p. 174), the court summarily rejected the contention that any ownership interest in the crop excused the plaintiff from the licensing requirement (*id.* at p. 175). Thus, it appears the court determined there was no valid joint venture agreement that could serve as a predicate for the plaintiff's claim of exclusion from the licensing requirement. *Capitelli v. Sawamura, supra,* 123 Cal.App.2d 169 does not stand for the proposition that a joint venturer selling its own produce pursuant to a valid joint venture agreement is required to obtain a license as a produce dealer.

In none of the remaining cases upon which appellant relies was there any issue concerning ownership or joint venture production of the crops in question. In *Fischer v. Machado* (1996) 50 Cal.App.4th 1069, 1072 [58 Cal.Rptr.2d 213], the issue was whether the statutory cause of action against a commission merchant precluded a common law conversion action against such a merchant. (It did not.) In *People v. Montgomery* (1940) 41 Cal.App.2d 574, 576 [107 P.2d 291], the primary issue was whether the commission of the crime of unlicensed solicitation of sales on commission was complete upon such solicitation even if the resulting produce was not delivered to the commission merchant in accordance with the requirements of the contract. (It was.) In neither case was there any claim that the person selling the produce on commission was an owner of the produce, and neither case sheds any light on the issues before us.

Appellant also cites *Mosesian v. Parker* (1941) 44 Cal.App.2d 544, 551 [112 P.2d 705], for the proposition that the licensing statutes are primarily for

the protection of producers of farm crops. We agree with this statement. However, there is no similar purpose expressed in the statutes to protect business partners or joint venturers from each other.

Finally, our conclusion is not altered by the testimony of one of respondent's employees at trial, in which he answered "yes" when asked by appellant's counsel whether he had "an understanding in 2004 that the tomatoes that were grown under the joint venture agreement . . . were going to be handled under the commission merchant laws of the State of California." The question of the legal requirement that respondent be licensed as a commission merchant, or not, on the facts of the case is an issue of law; the trial court was not bound by such testimony. Both the trial court and this court are permitted to determine that, on the facts before the trial court, the statutory licensing requirement was inapplicable.

B. *Good Faith and Fair Dealing Instruction*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

Levy, Acting P. J., and Kane, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2012, S199270.

---

[*]See footnote, *ante*, page 330.